IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARGARET C. RENFROE, | * | |
| | * | |
| Plaintiff, | * | Case No. 14-314 |
| | * | |
| vs. | * | |
| | * | JURY TRIAL DEMANDED |
| NATIONSTAR MORTGAGE, LLC, | * | |
| | * | |
| Defendant. | * | |

## COMPLAINT

**NOW COMES** Plaintiff Margaret Renfroe and as her Complaint against Nationstar Mortgage, LLC ("Nationstar") avers as follows:

### PRELIMINARY STATEMENT

This action arises from Nationstar's servicing of Plaintiff's home mortgage loan. Specifically, Nationstar has failed to properly credit Plaintiff's mortgage payments and has failed to comply with federal law by failing to investigate and correct its servicing error and provide certain requested information. Plaintiff seeks damages and attorneys fees for multiple violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA") and the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"). Plaintiff also seek damages for breach of the mortgage and note.

### JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1640 and 12 U.S.C. § 2617.

2. Venue is proper here because the events giving rise to Plaintiff's cause of action occurred in this district.

## THE PARTIES

3. Plaintiff is an adult resident of Mobile County, Alabama.

4. Defendant, Nationstar Mortgage, LLC ("Nationstar") is a corporation formed in the State of Delaware, with its principal place of business in Texas.

## FACTUAL ALLEGATIONS

5. Margaret Renfroe is a retired bank manager. She served as the Private Banking Manager for Regions Bank and retired after 42 years of service. She lives at 109 Glenwood Street in Mobile. This has been her home for 14 years.

6. In May 2006, Mrs. Renfroe refinanced her existing mortgage with Wilmington Finance, Inc. The amount of the loan is $139,4000 and it was financed with a fixed rate of 7.75 percent for a 30-year term. Monthly principal and interest payments are $998.68.

7. After closing, servicing of the loan was transferred by the lender to MorEquity, Inc. Upon information and belief, Mrs. Renfroe's mortgage was sold, without her knowledge, into a securitized pool. Several years into the loan, servicing was transferred again to Nationstar.

8. After Nationstar began servicing the loan, the monthly payments inexplicably increased by around $100. Mrs. Renfroe called Nationstar about this but was never given an explanation as to why the payments increased. Mrs. Renfroe is exempt from paying property taxes. She suspected that Nationstar may be paying taxes in error on her behalf and charging her for that through escrow and that the tax payments might explain the increase. However, she could not get a confirmation of that from Nationstar.

9.   In September 2013, Mrs. Renfroe refinanced her mortgage through Regions Bank and Nationstar was paid all sums demanded under the mortgage.

10.   Around the time she refinanced the mortgage, Mrs. Renfroe was informed by someone helping her with the loan that Nationstar may have been miscalculating the principal and interest payments and using an incorrect amortization schedule.

11.   On June 17, 2014, Mrs. Renfroe sent Nationstar a letter seeking an explanation of why her payments increased and explaining her belief that the payments were not calculated properly. Here is the text of that letter:

> I am writing because I have reason to believe that servicing errors have been committed in the servicing of the above-referenced mortgage loan.
> First, when you assumed the servicing of my loan, which I believe was sometime in 2011, you increased my monthly payments by $100.00. I've contacted your company several times in an attempt to get some explanation as to why my payments increased but was never provided one. As I have repeatedly explained to your representatives, I am exempt from property taxes in my county and I believe that you were charging me escrow for tax payments which were never due. This may explain the $100.00 increase or it may not. In any event, I am writing to request that you investigate this matter and provide me a detailed explanation as to why my payments increased. I'm also requesting additional information as set forth below.
>
> Furthermore, it came to my attention when this loan was refinanced in September 2013 that the payments you were collecting from me were calculated based on an amortization schedule for a 40-year term loan. I'm attaching a copy of my original Truth and Lending Statement and note, both of which reflect a 30-years mortgage. I believe that you applied the wrong amortization formula when calculating my payments and this caused me to pay more interest than I had originally bargained for. I believe that this resulted in a larger payoff that I had to pay when I refinanced the loan last September than what would otherwise have been the case. I'm requesting that you also investigate this aspect of my loan and refund me any interest or fees which were wrongfully collected.
>
> In addition to your investigation and correction of the errors identified above, please provide the following information:
>
> - Complete payment history of the loan showing how each payment was applied and identifying all fees and other charges collected in connection with my loan from its inception until it was paid off in September 2013;
>
> - A complete history of all disbursements made by you from my escrow account and all monies collected by you for escrow;

3

- A detailed explanation of each payment increase and the reasons for the increase;

- A list of each and every payment for taxes you made from the my escrow account, giving the date and amount of each payment. Also identify each and every refund you received in connection to a tax payment.

- State whether you believe that there has been a lapse of homeowner's insurance, state the dates of each alleged lapse and state the date you claim you notified me of the lapse, if any;

- Description of how my payments were calculated from the beginning of the loan to when it was paid, including explanation of how the payments were amortized;

- Detailed explanation of how the pay-off amount you provided in connection with the refinance of the loan was calculated and an itemized breakdown of that figure;

- State whether you have ever calculated my payments based on a maturity date other than June 1, 2036. If so, state when such calculation started and how many payments you collected from me based on that calculation.

- State the date you first became the servicer of the loan; and

- Identify the owner of the loan at the time it was paid in full.

Please send the requested information and documents to me at the above address. I look forward to receiving your response.

Sincerely,
Margaret Renfroe

12. On June 26, 2014, Nationstar responded to Mrs. Short's QWR, but failed to provide any explanation of payment calculation or amortization; and failed to specifically answer Mrs. Renfroe's questions. Nationstar also failed to provide the specifically requested information. Instead, Nationstar provided boilerplate statements and objections which do not apply to Mrs. Renfroe's letter, provided information and documents not requested and without explanation, stated the general conclusion that it did nothing wrong in servicing the account.

13. Nationstar's letter predominately consists of boilerplate language and which has no relevance to Mrs. Renfroe's specific dispute. Nation Star stated that the information requested "does not

pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or his considered proprietary and confidential. Therefore, this information is considered outside of the scope of information that must be provided." That statement mischaracterizes Renfroe's request and could not be based on any reasonable interpretation of her letter. Each of the items of information requested by Mrs. Renfroe relates directly to the servicing of her loan. Moreover, James' letter unambiguously states her belief that Nation Star is improperly calculated her payments.

14.     Upon information and belief, Nation Star uses this standard objection regardless of the specificity of the individual request. At the same time, Nationstar provide loan documents which were not requested, including a copy of the promissory note and mortgage and a most recent statement. Again, Mrs. Renfroe did not ask for these documents. Upon information and belief Nation Star's practice is to provide theses readily available documents in response to a QWR, regardless of the individual requests made in the QWR.

15.     Nationstar failed to provide the information actually requested. Mrs. Renfroe requested a "complete" payment history but was provided a history covering only the time the loan was serviced by Nationstar. Although Nationstar states in its letter that this information is "not available," it is difficult to imagine that Nationstar would assume servicing an existing loan with no information as to the prior payment history. Upon information and belief, Nation Star as a matter of course only provides payment history in response to the such request covering the period of time in which it serviced the loan. Nationstar also failed to provide the escrow history requested and an explanation of whether it was charging Renfroe for property taxes. Nor did Nationstar provide an explanation of how payments were calculated and which amortization schedule was used. All of this information is directly related to Renfroe's dispute.

16.     Most importantly, Nation Star took no reasonable measures to correct the error identified in Ms. James' letter. Nation Star states in its response that "[u]pon receipt of this correspondence, the above-mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them. As such, the above-mentioned loan account will continue to be serviced appropriate to its status." This is boilerplate language used by Nationstar in response to an NOE, regardless of the individual circumstances and it has no bearing on Mrs. Renfroe's particular situation. In fact, the loan can not "continue to be serviced" because she paid it off in September 2013.

17.     Since its June 26th response, Nationstar has failed to provide any further information to Mrs. Renfroe and has failed to issue any refund.

## COUNT I
## (VIOLATIONS OF RESPA)

18.     Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

19.     Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), grants borrowers the right to submit a "qualified written request" ("QWR") to the loan servicer requesting information and documents pertaining to the servicing of her loan. That provision also grants borrowers the right to submit a notice of servicing error ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e).

20.     A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error. Id.

21. Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the federal Consumer Finance Protection Bureau recently exercised its authority under RESPA and clarified the borrower's rights to have errors corrected. 12 C.F.R. § 1024.35.

22. Under Section 2605(e) and the implementing regulations ("Reg. X"), including the recent amendments thereto which servicers must take the following actions upon receipt of a QWR and/or NOE:

> -Provide a written acknowledgment of the correspondence within five days of the servicer's receipt of the QWR;
>
> -Within 30 days conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account and provide a the borrower with written explanation of the corrections made, the effective date of the correction and contact information for further assistance;
>
> -If, after reasonable investigation, the servicer determines that no error was committed, it must, within 30 days of receipt of the notice, provide the borrower with a written explanation of reasons for its determination, a statement of the borrower's right to request documents relied on by the servicer in reaching its determination and contact information for further assistance; either the reason for the servicer's belief that the account is being serviced correctly or a description of the changes made; and
>
> -If a servicer determines that it is not required to comply with these requirements then it must, within five days after receipt, provide written notice to the borrower setting forth the reasons for such determination.

23. In addition to these requirements, RESPA was amended in 2010 to add additional "servicer prohibitions." 12 U.S.C. § 2605(k). Under these prohibitions, a servicer may not:

> -Obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance. 12 U.S.C. § 2605(k)(A);
>
> -Charge fees for responding to valid qualified written requests or notices of servicing errors. 12 U.S.C. § 2605(k)(B);

7

-Fail to take timely action to respond to a borrower's notice of servicing error relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties. 12 U.S.C. § 2605(k)(C);

-Fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan. 12 U.S.C. § 2605(k)(D); or

-Fail to comply with any other obligation imposed under the implementing regulations. 12 U.S.C. § 2605(k)(E)

12 U.S.C.A. § 2605(k)

24. Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

25. Plaintiff's February 20, 2014 letter and supporting documents constitute a "qualified written request" and a "notice of servicing error" within the meaning of 12 U.S.C. § 2605(e) and Reg X.

26. Nationstar has violated 12 U.S.C. § 2605(e) by failing to respond to Plaintiff's QWR and NOE as required under that section and Reg. X. Specifically, Nationstar failed to conduct any reasonable investigation of the errors described in Plaintiff's letter and failed to refund monies wrongfully collected.

27. Nationstar has also violated 12 U.S.C. § 2605(k) in at least the following ways:

-Failing to take timely action to respond to Plaintiff's notice of servicing error; and

-Failing to comply with the requirements set out in Reg regarding responding to a QWR and a NOE.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Nationstar for violation of the RESPA, awarding the following relief:

a. Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

b. Reasonable attorney's fees, and costs expended in this proceeding; and

    c.        Such other and further relief as the Court may deem just and proper.

## COUNT II
## (VIOLATIONS OF TILA)

28.      Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

29.      This count asserts a claim under the Truth in Lending Act ,15 U.S.C. § 1600 - 1666 ("TILA")

30.      Nationstar was required by 15 U.S.C. § 1639f to promptly and accurately credit the Plaintiff's account with the payments received.  It has failed to do so.

31.       Plaintiff has suffered damages as a result of Nationstar's TILA violation.

**WHEREFORE**, the Plaintiff having set forth his claims for relief against the Defendant respectfully prays of the Court enter judgment in Plaintiff's favor against Nationstar awarding the following relief:

    a.        Statutory and actual damages as provided by 15 U.S.C.A. § 1640(1)(2)(a)(iv).

    b        Reasonable attorney's fees, and costs expended in this proceeding; and

    c.        Such other and further relief as the Court may deem just and proper.

## COUNT III
## (BREACH OF MORTGAGE AND NOTE)

32.      The allegations of this Complaint are hereby re-alleged and incorporated by reference.

33.      Nationstar has failed to apply, calculate and collect payments as required under the mortgage and note executed by Plaintiff.

34.      Plaintiff has suffered damage as a proximate result of the said breach.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Chase for breach of the mortgage and award him compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**TRIAL BY JURY IS HEREBY REQUESTED AS TO ALL CLAIMS AND DEFENSES ASSERTED HEREIN**

KENNETH J. RIEMER (RIEMK8712)
Underwood & Riemer, P.C.
One of the Attorneys for Plaintiff
166 Government Street, Suite 100
Mobile, Alabama 36602
251.432.9212
kjr@alaconsumerlaw.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

Nationstar Mortgage, LLC
c/o CSC Lawyers Incorporating Srv Inc.
150 South Perry Street
Montgomery, AL 36104